UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

MICHAEL S.,

                               Plaintiff,

v.

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

                               Defendant.
_____

DECISION AND ORDER

20-CV-6340L

Plaintiff appeals from a denial of disability benefits by the Commissioner of Social Security ("the Commissioner").[1] The action is one brought pursuant to 42 U.S.C. §405(g) to review the Commissioner's final determination.

On September 6, 2014, plaintiff turned 18 years old. Prior to that time, he had received disability benefits as a minor. On or about June 2, 2015, plaintiff's eligibility was redetermined under the standards applicable to adults, and he was found no longer disabled as of that date. This determination was upheld upon reconsideration after a disability hearing by a State agency Disability Hearing Officer. Plaintiff requested a hearing, which was held January 8, 2018 before Administrative Law Judge ("ALJ") John P. Costello. Plaintiff, and vocational expert Dawn Blythe, both testified.

---

[1] On or about July 9, 2021, Kilolo Kijakazi became the acting Commissioner of the Social Security Administration and is substituted for Andrew Saul as defendant in this action. *See* Fed. R. Civ. Proc. 25(d)(1).

On February 21, 2018, the ALJ issued a decision finding plaintiff not disabled. (Dkt. #11 at 11-20). That decision became the final decision of the Commissioner when the Appeals Council denied review on March 27, 2020. (Dkt. #11 at 1-4). Plaintiff now appeals.

The plaintiff has moved pursuant to Fed. R. Civ. Proc. 12(c) for judgment vacating the ALJ's decision and remanding the matter for further proceedings (Dkt. #12), and the Commissioner has cross moved for judgment dismissing the complaint (Dkt. #13). For the reasons set forth below, the plaintiff's motion is denied, the Commissioner's cross motion is granted, and the complaint is dismissed.

## DISCUSSION

Familiarity with the five-step evaluation process for determining Social Security disability claims for adults is presumed. *See* 20 CFR §404.1520. The Commissioner's decision that plaintiff is not disabled must be affirmed if it is supported by substantial evidence, and if the ALJ has applied the correct legal standards. *See* 42 U.S.C. §405(g); *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir.2002).

### I. The ALJ's Decision

Plaintiff was born September 6, 1996. His medical treatment records reflect a history of depression, anxiety, panic attacks and asthma, which the ALJ found to be severe impairments not meeting or equaling a listed impairment. (Dkt. #11 at 13).

In applying the special technique for mental impairments, the ALJ determined that plaintiff has a mild limitation in understanding, remembering, or applying information, a moderate limitation in interacting with others, a mild limitation in concentration, persistence and pace, and a mild limitation in adapting or managing himself. (Dkt. #11 at 13-14).

The ALJ determined that the plaintiff retained the residual functional capacity ("RFC") to perform work at all exertional levels, but with certain nonexertional limitations: he can have no more than occasional exposure to respiratory irritants such as dust, odors, fumes, extremes in temperature, and humidity. Further, plaintiff is limited to low stress work, defined as work requiring only occasional changes in the work setting, and can no more than occasionally interact with coworkers and the general public. (Dkt. #11 at 14).

When asked at the hearing whether jobs existed in the economy for a hypothetical individual with this RFC, the vocational expert identified the representative unskilled, medium exertion positions of laborer and hand packer. (Dkt. #11 at 19). The ALJ accordingly found plaintiff not disabled.

**II.     The ALJ's Assessment of Medical Opinion Evidence**

Plaintiff alleges that the ALJ overlooked the medical opinions of consulting psychologist Dr. Christine Ransom and two state agency reviewers, and failed to properly evaluate or fully credit opinions by plaintiff's treating psychiatric nurse practitioner, Cheri Turco.

Dr. Ransom examined plaintiff on May 4, 2015. She concluded that plaintiff had no difficulty with understanding and remembering simple instructions and tasks, maintaining attention for simple tasks, and maintaining a schedule. Dr. Ransom opined that plaintiff was mildly limited in performing complex tasks, relating adequately with others, and dealing appropriately with stress. (Dkt. #11 at 540-43). Stage agency reviewers T. Harding and M. Marks reviewed the record, and opined that plaintiff had no greater than mild limitations in any functional area. (Dkt. #11 at 544-56, 569-81). The ALJ's decision does not mention these opinions.

Ms. Turco sporadically treated plaintiff for depression and anxiety on approximately nine occasions between September 10, 2015 and July 24, 2017, with visits ranging from two weeks to

3

several months apart. (Dkt. #11 at 648-668). Plaintiff's treatment with Ms. Turco consisted largely of in-person therapy: plaintiff reported that at age 14, he had discontinued medications that were prescribed for ADHD, bipolar disorder and anxiety, and the record indicates that he resisted taking psychiatric medications for anxiety, due to concerns over the history of addiction in his family. (Dkt. #11 at 540, 668). In November 2015, after two counseling sessions, Ms. Turco wrote a brief, single-paragraph letter opining that plaintiff "struggles with extreme anxiety which significantly impacts his functioning and his ability to relate to people . . . he will continue to need services from Social Security." (Dkt. #11 at 584). Ms. Turco completed a formal mental health RFC questionnaire on July 24, 2017, opining that due to plaintiff's reports of "significant social anxiety," and her own observations that plaintiff was fidgety, distracted and had difficulty maintaining eye contact during sessions, plaintiff was "markedly" limited with respect to understanding and remembering complex instructions and interacting with others, "moderately" limited in understanding and remembering simple instructions and responding appropriately to work situations and changes, and "mildly" limited in making work-related decisions. (Dkt. #11 at 644-46).

The ALJ gave Ms. Turco's opinions "little" and "some" weight respectively, reasoning that the limitations described therein were inconsistent with her treatment notes. The ALJ did credit Ms. Turco's opinion with respect to plaintiff's marked limitations in carrying out complex tasks, but found that the record supported only a moderate limitation with respect to social interaction rather than a marked one, because a marked limitation would be inconsistent with plaintiff's self-reported daily activities.

Initially, any failure by the ALJ to discuss or weigh the opinions of Dr. Ransom or the state agency reviewers is harmless, as the RFC determined by the ALJ is wholly consistent with, and

4

supported by, those opinions. *See Sarah C. v. Commissioner*, 2021 U.S. Dist. LEXIS 58835 at *58 (N.D.N.Y. 2021)(ALJ's failure to properly weigh an opinion is harmless where the opinion is consistent with the ALJ's findings, such that assigning greater weight would not have changed the outcome); *Wilson v. Commissioner*, 2019 U.S. Dist. LEXIS 42482 at *7 (W.D.N.Y. 2019)(failure to assign weight to an opinion may be harmless, where the ALJ otherwise discusses the evidence in detail and the ALJ's conclusion is consistent with the opinion).

With respect to Ms. Turco's opinions, the ALJ adequately set forth his reasoning for declining to grant them more than "some" or "little" weight. Initially, nurse practitioners are not acceptable medical sources entitled to controlling weight, although their opinions are to be considered using the same factors, including: (1) the frequency of examination and the length, nature and extent of the treatment relationship; (2) the evidence in support of the provider's opinion; (3) the consistency of the opinion with the record as a whole; (4) whether the opinion is from a specialist; and (5) other factors brought to the Social Security Administrations attention that tend to support or contradict the opinion. *See* 20 § C.F.R. 416.927(c); *Pike v. Colvin*, 2015 U.S. Dist. LEXIS 35143 at *11 (W.D.N.Y. 2015) (quotation and alterations omitted).

The ALJ took note of Ms. Turco's qualifications and area of specialty, and discussed the frequency and nature of her counseling sessions with plaintiff in great detail. The ALJ was correct that the marked limitations in social functioning described by Ms. Turco were inconsistent with plaintiff's treatment notes, and appeared to be based primarily on plaintiff's self-reports. (Dkt. #11 at 644-45: "Client reports having difficulty . . . Client reports significant social anxiety . . . Client denies substance use"). With one exception, Ms. Turco's progress notes described plaintiff as cooperative, with fair or good eye contact, calm demeanor, normal speech, coherent thought

5

processes, normal cognition and thought content, and fair-to-good insight and judgment. (Dkt. #11 at 648-63).

Marked limitations in social functioning were also, as the ALJ noted, contradicted by plaintiff's activities of daily living. These included frequently spending time with family members, friends, and a girlfriend, shopping in stores, assisting the grandparents with whom he lived, and using public transportation. (Dkt. #11 at 71-83, 304-309, 542, 650, 658). Other evidence of record not identified by the ALJ, such as Dr. Ransom's opinion, also incidentally supported his finding that plaintiff's social limitations were no more than moderate.

In short, I find that the ALJ's failure to mention the opinions of Dr. Ransom and the state agency reviewers was harmless error, that his weighing of Ms. Turco's opinions was appropriate and sufficiently explained, and that his RFC finding was supported by substantial evidence.

**III.     The ALJ's Duty to Complete the Record**

Plaintiff also argues that the ALJ failed to complete the record, and specifically to comply with his obligations pursuant to Social Security Ruling ("SSR") 11-2p, because the record did not contain plaintiff's educational records, or opinion evidence from educational sources.

SSR 11-2p sets forth the considerations relevant to a redetermination of benefits for a minor claimant upon turning 18, and notes that "[e]vidence from school programs, including secondary and post-secondary schools, can . . . help us evaluate the severity and impact of a young adult's impairment(s)." 2011 SSR LEXIS 2 at *10 (2021). SSR 11-2p specifically identifies four categories of educational evidence that could assist an ALJ in determining a young adult's functioning, including: (1) evidence concerning whether the young adult received special education and related services; (2) evidence pertaining to any individualized education program ("IEP") formulated for the young adult, describing the skills they needed to develop; (3) evidence

6

pertaining to IEP transition goals, whether transitioning to supervised and supported work and living settings, or independent ones; and (4) considerations related to the fact that goals contained in an IEP may be set at an achievable level to foster a sense of accomplishment, and "may be lower than what would be expected of a young adult without impairments." 2011 SSR LEXIS 2 at *10-*13 (2021). Plaintiff argues that the ALJ's failure to consider plaintiff's educational records or to obtain supplemental educational records or opinions created a gap in the record that deprived his findings of substantial evidence.

The Court disagrees. Initially, the record establishes that plaintiff never received special education services, and as such, there are no records or IEPs of the type contemplated by SSR 11-2p for the ALJ to have considered. Plaintiff earned his General Equivalency Diploma ("GED") via a regular education program, and when asked to provide special education records in connection with plaintiff's initial application, plaintiff's school confirmed that he "never was a special education student." (Dkt. #11 at 328, 487, 496, 540).

Furthermore, plaintiff's initial disability determination was based upon a finding of marked limitations in the domains of acquiring and using information and attending and completing tasks, neither of which are part of the grounds upon which his present disability claim rests – to wit, panic attacks and social interaction limitations. The treatment records from the offices of plaintiff's pediatrician, Dr. Elizabeth O'Brien, span the period from 2008 through 2015 and document plaintiff's symptoms and treatment related to ADHD and depression. However, neither Dr. O'Brien's records, nor any of plaintiff's other treatment records, make any diagnosis of anxiety or mention panic attacks until June 24, 2015, after plaintiff turned 18. (Dkt. #11 at 425-85, 508-33, 558, 560-63). Pediatric examinations of plaintiff made in connection with his initial application noted no evidence of anxiety or social issues: plaintiff had normal eye contact, coherent thought

processes, normal effect, intact attention and concentration, age-appropriate insight and judgment, and had "a good relationship with his peers and his family." (Dkt. #11 at 487-88, 491-92). In short, there is no suggestion that any of the educational records that plaintiff alleges are "missing" related to educational programs or accommodations that might have altered the ALJ's determination of plaintiff's ability to function in a work setting, or that otherwise contained persuasive evidence of disability.

I have considered the remainder of plaintiff's arguments, and find them to be without merit.

## CONCLUSION

For the foregoing reasons, plaintiff's motion to vacate the ALJ's decision and remand the matter (Dkt. #12) is denied, and the Commissioner's cross motion for judgment on the pleadings (Dkt. #13) is granted. The ALJ's decision is affirmed in all respects, and the complaint is dismissed.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
July 12, 2021